

RECEIVED SH

11/10/2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**1:20-CV-06690**

United States District Court

Northern District of Illinois

Theresa Fang, )
Plaintiff )
)
V. )
)
Village of Skokie, )
Defendant )

**JUDGE VALDERRAMA**
**MAGISTRATE JUDGE FUENTES**

### COMPLAINT

**1) I have been discriminated based on:**

    ** ** Unfair Termination**

    ** ** Village of Skokie violated Federal Law and my Human Rights.**
    ** ** Physical and Emotional Disabilities were caused by years' harassments by
    defendant.**

    ** ** Village of Skokie is not an Equal Opportunity Employer .**
    ** ** Age - I was 72 years old at the time of harm. The new hire was 56 years old.**

**A) An Unfair Termination**

    On April 5, 2019 at about 4:00 p.m. I was told by Julian, the Finance Director, that
my position with Village of Skokie(VOS) was eliminated due to VOS's so called
"budget" and my last working day would be **April 30, 2019**. I was so shocked and
very sad that after serving VOS for almost 17 years, this was not what I expected.
I told Julian that I knew the reason I got discharge was all about his "**retaliation**".
He did not deny and only responded "**If you think so**". So I believed their notification
of elimination of my position and without offering any severance pay is in fact a

unfair "**Termination**". **(Attachment A)**

**B) Being Forced to Retirement**

    Stella, the new hired employee who replaced me, asked Julian if VOS can extend
my work time till August. She was afraid of being alone when both Julian and Katie
were going on a 3 week vacation in July and she'd have hard time handling everything
all by herself. So VOS granted her wish and decided to let me stay to help her till
August, 2019 only if I turned in my retirement notice. Although I did not want to retire at
that time, I was forced to write a Retirement Notice so that I could stay till August 2019.

After I consulted with Christa, Personnel Director, I, against my will, turned in a
"Retirement Notice" to VOS on April 19, 2019.

1

Yes, I did express to Stella once by saying that if I leave, I wish I can leave on my anniversary month which is August, so I can easily count my service years with VOS. I believe that Stella may have used my words to request my longer stay to help her.

**(Attachment B)**

I have two questions that I want to ask VOS:
**First**, In order to let me stay longer to help VOS and Stella, VOS can just allow me to stay till August. Why giving me a condition and wanted me to write them a retirement notice? VOS let me stay longer to help them, why I had to retire? My status changed from "**Termination**" to "**Retirement**". This is an **involuntary, forced retirement**. For this, I was unable to get unemployment benefit.
**Secondly**, VOS accused me that I intended to prolong 4 months service with VOS to maximizes my IMRF's retirement benefit. **That's totally untrue. I never** requested VOS to give me more time to serve. It was Stella's idea and she requested VOS, not me, She did this for herself. **(Attachment A)**

2) **Six years of "hell" under Julian's micro supervision.**
   **He tried to make me insane so I might resign or get fired.**


After ten years working with VOS (since August 12, 2002), VOS hired Julian

in the Fall of 2013 as my supervisor. His title then was Assistant Finance director. Almost immediately I started getting hard time from him. Under his micro supervision, not only I constantly have to accept his unreasonable accusations but also have to bear his double standard mistreatments, numerous yelling, insulting, harassing and abusing behavior in front of co-workers. The abuses include but not limited to, not allowing to discuss anything with George, the former Finance Director, not allowing me to make tea for George even George asked me to do so. He told me that making tea would be wasting my work time.

**Here is an example:**
**One late afternoon, about 4:30 p.m. Julian asked me to prepare payroll deduction files and I should upload those files to the bank and agencies, then he walked out the office. As soon as he left the office, I received a Skokie resident's complaining call. It took me almost 15 minutes to resolve the caller's problem. When Julian returned office, he asked me if I uploaded the file yet? After he heard my "not done yet" answer, he immediately raised his voice and said "I know it, I know it, you purposely not wanting to finish the job, you just want to against me". I tried to explain what had happened and asked him to check my phone record about how long I've been on the line. No, he won't listen, he continued accusing me that I didn't finish work was simply and purposely against him and to challenge his power. He even criticized me that I did not know how to **prioritize** my job. I asked him to give me a reason to prove that how and why he thinks that I was against him. "I just know it" was his answer. He cannot prove it.

There is an old saying: "If you are out to condemn somebody, you can

2

always trump up a charge".

When this incident happened, our then Finance Director George Van Geem was in his office, he must have heard everything but he failed to stop Julian's abusing behavior. More harassing and insulting stories @ (**Attachment C1, C2**)

### 3) Julian planned and intended to Eliminate my Position

Evidence shows that Julian planned to eliminate my position when he just started working with us. From giving me hard times, unreasonably judging my work, double standard treatments plus harassing me in front of coworkers etc...I believe that his insulting behaviors toward me was part of his **plan**:

A) He was taking steps toward my discharge.
    **First**, he took away all of my jobs related with filing Fed and State's income taxes duties then he took over my producing and printing A/P checks etc... Imagine, being a Finance Director was doing a clerk's printing checks work? This time period was way before 2016. After we changed our check printer, he purposely did not connect the printer with my computer. Based on EEOC's VOS State of the Case, VOS indicated that I did not file a timely charge of discrimination in response to the transfer of my job duties. How can I? He was my supervisor, especially, I was under that abusing environment, I did not dare to challenge his decisions.
    Besides, by then I just got a new and a very challenging work to do which was to manage and to report the monthly VOS's Food and Beverage local taxes.

    **Secondly, J**ulian used the opportunity of changing our new software system (from HTE to BS&A) to claim that my position had not enough work to do any more.

That is not true at all. The work involving check requests and purchase orders is less than **20%** of my work. It is not **90%** as he claimed. To prove that, please read my **"position review questionnaire "** carefully. (**Attachment D1,D2, D3**)

This report was reviewed and signed by former Assistant Finance Director Sandra Collins on 9/14/2007. With which I added my additional major assignment, the local Food and Beverage taxes, from September 2015.

Based on my experience, this local Food and Beverage taxes cost more time than the A/P entry work. It's more than 25 % of my work. And those work has nothing to do with our new system at all (**Attachment D1, D2, D3**)

Although Julian claimed that the new computer system eliminates my A/P entry work, in fact, I had to spend more time in checking the correctness of each employee's entry.

So I actually worked even more hours than before.

B) One fact is very true; It doesn't matter what kind of computer system we use, we cannot eliminate the basic Accounting's features such as A/P, A/R, Journal Entries, Bank Reconciliations, Filing Taxes etc. VOS states that they cannot afford to retain a position that is no longer necessary based on technological advances. They moved my job duties to a newly created position so it can be done by the person hired for that new position. Julian's intention was proven by his action. Julian was not honest to VOS and EEOC.

Please review the **Attachment D1,D2 & D3**, which lists all my old job duties plus the 25% additional Food /Beverage local taxes. I check marked the works which I was still doing even on the last day before I left VOS in August 2019. As you can see that most of the marked works are not replaced by the BS&A new system.

C) Julian wanted me to **resign** once but not succeed in the year of 2016.
On July 14, 2016, I discovered that our payroll clerk Katie took 3 vacation days (7/1, 7/8 and 4/22) but failed to record in our payroll system. Instead of reporting to Julian (he was off that day), I chose to ask her, I thought she might forget or made an error, so she can make corrections without notifying our boss. To my big surprise, as soon as I finished my question, she immediately jumped in George's office and accused me of breaking in her privacy. But, I was just trying to do my job. When Julian learned what had happened, again, he accused me that I did this was simply creating the problem to against him, especially when he was not in the office. So he asked me to **resign**. He told me that if I leave he would give me a good reference; otherwise he would not give me the new system training. Instead of correcting Katie, the party who was doing wrong, Julian insulted and punished me. He did not schedule me to attend the new BS&A system training. He even totally cut off my access to our payroll system. I documented and reported this incident to Christa. Again, no justice was done. **(Attachment E1, E2)**

D) Based on the job Ad, the qualification states that they need someone who has 5 year payroll experience. They hired Stella, but she did not even have payroll experience and I had 25 plus years and is more qualified than Stella. Before I left VOS, I asked Christa "I know that I missed the chance to apply for the job, and Julian intended to prevent me from applying for the job. What if I applied in time, would I be hired?" Her answer was not surprised me at all. **"No way"** she answered, "I think so too" I said. Her answer is a **proof** that my discharge was intended and well planned by Julian.**(Attachment F)**

4) **Creating a new job title "A/P and payroll supervisor" to replace "Sr. Accounting Clerk" position**

4

I call this act is "**graft**". He used a takeover technique and has succeeded in grafting to play a sly trick.

After former Finance Director George retired, from June 2017 to September 2018, we had only Julian and me to handle Accounting Division's work. But the fact is from the day I left till now, Julian and Stella handle the same job duties as I did before. Thus, I could say that my **job duties** were not eliminated, they eliminated only my **position.** My job duties were divided between the Finance Director, and the new position. This points to the fact that VOS rather **pay more money** to hire a much **younger,** Stella to do what I did before. **(Attachment F)**
The new BS&A system is not designed only for eliminating some of my job. It also affected all other departments in VOS. Why was I the only one to get the termination? I knew that some of employees when they retired, their job vacancies were not refilled. This is not in my case. Julian created a new position first, then he claimed that my position is no longer needed. I was the only one being forced to go.


## 5) Seeking Medical Help

For years, I worked in an unhealthy and mentally abusing environment. VOS failed to protect my right so I had to seek medical help to deal with my anxiety, depression and my office's mistreatments.
Other than seeing my own personal physician, I've seen three different psychologist and psychiatrists from the period of **Sep 2014 to Nov 19, 2019.** And I have to take anti-depression pill ever since. **(Attachment G1, G2, G3)**

## 6) Village of Skokie is not an Equal Opportunity Employer

VOS accused me that I did not apply for the new position. How can I? They kept the hiring information from me. Since June 2017 after former Finance Director George retired until September 2018, a couple days before Stella began to work, Julian never mentioned to me that he had a plan to hire somebody. He posted the hiring Ad during my hospitalization time. Sadly, very often, I had to call him and Personnel office to report my sick absence situation. Both of them did not tell me about this hiring matter. The application's deadline was March 30, 2018 and when I returned to work on the second week of April, 2018. It was too late. I don't think this is **coincidence**. I believe that he just caught the right time to avoid my chance of applying. **(Attachment F)**

## 7) Village of Skokie is responsible for all of what had happened to me not only financially but also physically and emotionally.

A) It's being said, "The Village is committed to providing equal
employment opportunities for all current and potential employees,
and maintaining a work environment free from any kind of discrimination
or harassment". I don't think those words were applicable to me.
The Village failed to protect me from Julian's mistreatments. Even I reported
the incident timely; unfortunately, nothing had happened.

After all those years' hard working, dedication and devotion, VOS gave
me this kind of ending, a shame discharge. I felt that it was absolutely
insulting, unfair and unjust.

B) Needless to say that my performance was not satisfied to Julian. All I
can say is that when somebody is nitpicking on you, nothing seems right.

One time, when I was very disappointed on his review, he told me

"It's too bad, I am your boss!" (**Attachment E2**)

**8) I Deserve A Fair Justice**

A) I know that between me and my former employer VOS, we are not on the same
platform. Being a former employee, I am at the disadvantaged side. Most of my
witnesses are my former coworkers, who are not willing to risk their jobs to be
witness on my claim. My only and most powerful witness is Christa. She is the one
who had witnessed all my sad stories and had had all my documents and evidences.
Unfortunately, she cannot help me at all, because she is on the Defendant's side.

B) I find out that VOS's statements to EEOC are not believable; some are not true,
some of them I never heard of. VOS is not honest to EEOC. VOS used the
incorrect statements to dismiss my case.

**Based upon what I stated above, I am asking the COURT to grant me "Justice".**
**VOS violated the Federal Law and my Human Rights. I deserve a justice and**
**I have confidence that you can help me and I believe that justice will be done.**

Thank you for your help.

Sincerely,

Theresa Fang
1712 Robin Lane
Glenview, IL 60025
847-977-6276(cell)    847-251-3165(home)

Attachment # *A*

**Theresa Fang**

**Subject:**                    FW: FYI - the day I got notice ( 4/5/19 and 4/10/19)

**From:** Theresa Fang <theresafang1228@yahoo.com>
**Date:** April 19, 2019 at 2:02:11 PM CDT
**To:** christa.ballowe@skokie.org
**Subject: FYI - the day I got notice ( 4/5/19 and 4/10/19)**

After I got the "I have to leave VOS " notice (Stella was with us) from Julian about 4pm
on 4/5/19, I was told that my last day with Village will be on April 30, 2019. Julian told me that
they made this decision more than two months ago due to their budget my position is no longer
exists, they planed to create a new position to do the accounting analysis job. I was shocked and
not happy about this. I asked Julian that if they made decision a few months ago why not let me
know sooner? His answer was only three words "I am sorry!" About 5 o'clock, before we left
office, I told Stella that I always thought that one day when I have to leave here, I wish I could
walk out gracefully and leave at or about my anniversary time, so I can easy to calculate my
retirement stuffs.

About 9:30 in the morning on 4/10/19, Julian told me that Stella had told him regarding my
retirement concern, so he made an option for me that is unless I send him a writing notice that I
plan to retire in August 2019 which will mark my 17th anniversary I worked for VOS, otherwise
I have to leave the end of April 2019.  I told him that before I do this I have to talk with my
husband and Christa, since Christa was not available till the following Monday so he allowed me
to send in the notice on the week of 4/19/19. While we were talking about this issue I asked him
two questions : 1) I've been work with finance department for over 16 years, I was hired to do all
the jobs which Stella now is doing, if VOS has budget difficulty, why you pay higher rate to her
to do the same job?  2) Last time he wanted me to leave (2016) he told me that "If you lease now
I'd give you a very good reference, if not, when we start our new system you will all on your
own, you are not going to have any training". Sure he really did so, this was a huge
insulting,humiliating to me and deeply hurt me forever. When I mentioned those my past
"wounds",  he got very mad and refusing to continue our conversation and continuing kept
saying " stop, that's it " and then he raised his voice accusing me that I did not even have the will
to learn the new system and brought up that after he trained me "hours" and I was not able to
produce one preissue check listing for him. That's not true. Actually, up to now I still don't know
how to do it. Why? I guess that's because my computer never set up that kind of features, in
other words, my computer don't have the "access" to allow me to do it.

Please apply this note to my personal file.
Thank you and have a nice holiday weekend!


Sent from my iPad

Attachment # *B*

To whom it may concern:

This letter is to notify you of my intent to retire from Village of Skokie on August 12, 2019. This would mark my 17 year anniversary with the Village.

During my many years of service here, I've made many friends and learned a great deal from my colleagues. Now I have to say good bye to everyone and hope this is the right time to move on to the next chapter of my life.

Sincerely,

*Theresa Fang* 4/19/19
Theresa Fang

Finance Dept

Attachment # C1

**2) Additional in "Hell" Stories:**

**Julian also purposely forbade me from entering my office before 8:25 a.m.. ( We start work @ 8:30 a.m.) while the only other co-worker in the same office - Katie, who can get extra pay depends how early before 8:30 a.m. she comes in the office. Often times people seeing me standing outside waiting to get in my office and ask why, I feel very sad and **humiliated**. Nobody believed that he customized a new office code just for me. I orally reported to Christa and I was told that I have the right to enter my office any time. But, I still had to wait until 8:30 to go into my office every morning. This unreasonable order proved that he was trying to make me **insane**.

** Once, I asked a co-worker to help me push a cabinet to the right place so I can open the drawer. Noor helped me and it Was done in seconds. When Julian noticed that the cabinet has been moved about 1foot away from my desk, he got mad and in front of Katie, he started yelling, shouting and continuously accusing me for more than 10 minutes, saying that I was using other people's working time to do my **personal** thing. I was so humiliated by his accusation and asked him if we could talk privately, he refused and said "No, I just want to know that you are not lying". I did not lie. He purposely said so in front of Katie. I believe Katie was the one who told him the the story. Imagine, I only asked someone to give me a hand, I was not doing a crime. For me, my supervisor's abusive insulting behavior was very **hard to bear.**

** **Doing my job, but was accused to do my personal stuff**
One day, Julian saw me arranging my own S-125 Medical Care receipts and preparing the reimbursement claim Form. He accused me that I was doing my personal stuff. Preparing and processing the claim for the employee members, including myself, was my job duty. But when he saw that I was doing my own claim, **It's a crime**.

** One time, I called a restaurant owner and telling him that based on his tax paper filing, he over paid to VOS and I suggested that he can take those credit for the following month. Julian accused me that I did not ask him first and I put VOS's money away. I don't understand why I was allowed to collect underpaid money from the payer and not allowed to adjust account balance of the overpaid payer?

*Attachment # C2*

** Back to year 2015, one morning I took about ten minutes longer break time than usual because I had to discuss some loan issues with my banker. As soon as I came back to my desk, Julian loudly asked me "Theresa , you took too long for your break today. When are you going to pay back?" I was shocked. Before I could say any words to show him my apology, the first thing came to my mind was Katie's daily breaks which was always longer than her break time. After I told Julian that I won't take next morning's break to make up today's longer break, then I asked him if he ever sees how many breaks Katie took every day? He told me " **I see you, I didn't see her**".

** Very often Katie came to work in the morning with wet hair. I know that there's no rule to against employee coming to work with wet hair. But I was allergic to her shampoo, not only because the smell caused me headache but the chemical ingredients made my eyes tearful all the morning. I asked Julian once if he could help me to change the situation. All I got from him was "**What's wrong with that? I can't smell her, but I can smell you**". How **rude** he was! He was not only ignored my suffering but also **insulted** me terribly.

        For years, I've documented and reported most of Julian's insulting and mistreatments to Christa Ballowe - the Personnel Director. Again, I got no help from the higher officials. The abusing situation was getting worse.

*Attachment # D 1*

# VILLAGE OF SKOKIE

# POSITION REVIEW
# QUESTIONNAIRE

## General Information
(Please type or print your responses.)

Position Title: Sr Accounting Clerk

Department:  Finance          Division:  Accounting

Supervisor's Name & Title:   Sandra  Collins – Assistant Finance Director

Name of Employee Completing this Questionnaire:   Theresa Fang

Date Questionnaire is being completed:       9/14/07

Briefly state what you believe is the overall purpose of this job.  In other words, **why does this job exist?**

**This job's primary duties are processing disbursements, reporting, posting cash receipts and bank reconciliations.**

**The majority of my time is spent in the area of daily routines, bi-weekly payroll deduction transmissions, monthly journal entries, all bank reconciliations, Section 125 and disbursement processing.**

281943

**DUTIES AND RESPONSIBILITIES:**

*Attachment #D2*

1. Please list and describe the essential functions of the job you perform. These are tasks that are actually being done now, not what should be done or what was work once done.

   In general, one or more of the following apply to essential functions:
   - It is performed frequently.
   - It is a necessary function that if not performed, the Village would be adversely impacted.
   - It is a highly specialized function requiring special expertise or ability.

2. Estimate the percentage of time spent performing each separate function (total should equal 100%) AND indicate if this function is performed ("D" daily), ("W" weekly), ("M" monthly), ("Q" quarterly), or ("Y" yearly).

| *EXAMPLE* | Essential Functions of the Position | *EXAMPLE* | Freq. | % of Job |
|---|---|---|---|---|
| Answering Phones | | | D | 70% |
| Budget Preparation for Division | | | Y | 10% |

| Essential Functions of the Position | Freq. | % of Job |
|---|---|---|
| *Clearing cancel checks for general account *Rec Bank/System c/s/cks* | D ✓ | |
| *Data entry of check requests and purchase orders *Finance Dept only* | D ✓ | |
| *Cash bond refund process-edit vendor's name and address | D ✓ | |
| ~~*Posting cash receipts~~ △ | D | |
| *Petty cash(checking) quick check/processing | D | |
| *Section 125 plan implementation and process claims | D ✓ | |
| *Responding inquires | D ✓ | Total 40% |
| ***B*W is Bi-weekly** | | |
| *Reporting and processing Voucher List *insert/mailing Checks* | *B*W ✓ | |
| *Prepare payroll deduction's wire transfer sheets. | *B*W | |
| *Submit payroll deductions file thru website-ICMA 401(a),457, RHS and nationwide etc... | | |
| *Prepare payroll FOP and Credit Union files by fax and by mail. | *B*W ✓ | Total 15% |
| *Reconcile all bank accounts | M ✓ | |
| *Reconcile petty cash (cash box) account and make reimbursement check request | M | |
| *Prepare Library IMRF billing | M ✓ | |
| *Prepare IMRF and IMET file reporting thru website | M ✓ | |
| *Preparation of spreadsheets to support accounting function such as CTA collections, mail room postage usage and investment accounts interest earnings | M | |
| *Month end journal entries-payroll, postage, taxes, interest earnings etc.... | M ✓ | Total 20% |
| *Sorting in/out mails* | W ✓ | *new* |
| *Old escrow bond refunds study-to verify, locate holders to prevent them from going to unclaimed property | Q ✓ | |
| *Outstanding checks study-to locate vendors thru phone calls, mails and internet research | Q ✓ | |
| *Reporting Form 941-quarterly payroll income tax return | Q | |

281943

*Attachment #D3*

| Additional Job Duties and Responsibilities | Freq. | % of Job |
|---|---|---|
| **Cash applications** | Q | |
| *Prepare IL-941-Illinois Quarterly Withholding Income Tax Return | Q | |
| | | Total 15% |
| **Support annual audit** | Y ✓ | |
| **Research unclaimed property** | Y ✓ | |
| **Reporting Form 940-annual payroll income tax return** | Y | |
| **Maintain and update all accounting storage records** | Y ✓ | |
| *Reporting IL-W3-Illinois Annuual Withholding Income Tax Return | Y | |
| *ReportingForm WT-7 – Wisconsin Employers annual reconciliation | Y | Total 10% |
| *Managing VRS Food/Beverage local taxes - Since Sept 2015 Open payment mails, stamping recived dates, copy checks and filing papers. Book Vendor payments, update Vendor paid records. Communicating with late pay Vendors. Prepare over due letters Etc---- | M ✓ | Total 25% |

**Check one definition that best describes the position's ability to make independent decisions:**

☐ Immediate Supervision – Work is performed in accordance with established guidelines or procedures. Assignments are given with explicit instructions or are so routine that few deviations from established practices are made without checking with the supervisor.

X  General Supervision – Judgment is necessary in selecting appropriate established guidelines to follow. Interpretation of general administrative or operational policies and procedures is sometimes necessary.

☐ Direction – Work requires frequent interpretation of policies, and/ or guidelines. Discretion is required in the selection of appropriate resources to use in accomplishing assigned work.

☐ General Direction – Initiative and resourcefulness are necessary in performance of the job. Judgment is required in applying concepts, plans, and strategies which may deviate from traditional methods and practices.

**From:** Theresa Fang <theresafang1228@yahoo.com>
**Date:** August 9, 2016 at 6:58:44 AM CDT                    Attachment #E 1
**To:** "christa.ballowe@skokie.org" <christa.ballowe@skokie.org>
**Subject: In Trouble**

Good morning Christa,

As I expected, Julian asked me to talk over on what had happened on July 14, 2016 yesterday late afternoon. He was very upset with me because he was convinced that I did this purposely when he was not in the office, like last time I was moving my cabinet when he was out for lunch. He claims that I am using his absence as the opportunity liberally to challenge his authority.

He told me why Katie's July 1 and July 8 two days vacation were not recorded. It was simply because by then he did not approve her time sheet yet, my question is with no approval time sheet she can pay herself all regular hours?

He told me that he'll stop me doing any job related with payroll and gave me two choices: 1) I plan to leave V of S, then he 'll give me a good review. 2) If I choose to stay, not only I can't have a good review and more likely I will be on my own when the challenge time comes (change our software system).

During the conversation, I learned that some work previously I was allowed and so I did it for many years, he told me that I was not doing it right. One time I called a restaurant owner and telling them that base on their filing report they over paid to us and I suggested that they can take those credit for the following month reporting. I was accused by him that I did not to ask him first and put Villages's money away. I don't know why I was allowed to call and collect under pay money from the payer and not allowed to adjust the over paid payer?

My big surprise is that for past three years, no matter what happened between us, he made his mind to think that it was always me to challenge his power. He told me that he doesn't believe those happenings were incidents, they all happened because I intended to do so. I told him that my experience is that no matter what way I do, he'll always tell me the other way is the way it should be.

I don't know if you ever did something about this yet? If not, please hold a little while, since Julian strongly think that Katie wouldn't do such thing and I suggested that he should take a good look about her time records and I even asked him why she took many full days off and there is no one full vacation day record for the past seven months? He gave me no answer, all he concentrated was my part of mistake. Further more he change the way how to fill out our time sheet, from 8:30 a.m. to 5:00 p.m. period, any late time in or early leave time will not be indicated, only use lunch or next day to make up.

I am so sorry to bother you and take your time again. I really don't know what today will be or could be any more. Thank you and have a nice day.

Theresa

Attachment #E 2

**Theresa Fang**

**Subject:**　　　　　　　　FW: Injustice

**Date:** Sept 6, 2016 at 6:15 AM

**Subject: Re: Injustice**

Hi Christa,

It's been four weeks since Julian and I had an emotional talk. Here is what they did to me- they cut off- I mean they had MIS blocked my most part of payroll excess through HTE. I feel that this action and treatment as a punishment due to my accidentally found out Katie's wrong doing. I see this is a big insult and injustice to me.

I asked both George and Julian to check Katie's April 22, 2016 pay record and her time sheet, because I knew this particular day she was off. I heard nothing from them and I believe that there's no adjustment made either. To prove that I was right so I got a copy of evidence to send to you. I strongly believe that whether this not so honest behavior were intentionally planed or not, It got to be stopped. Now, it looks that there 's some cover up there and even secured her ability and power to do any edit work on her own time sheet and her pay record.  I bit there must have some corrected sign on her July1 and July 8 time sheet. This is my guess and I am not interested to take a look on those edited time sheets simply because it's all unbelievable.
Again, I don't buy what Julian told me that the reason she did not pay her that 2 days vacation instead pay 2 days regular was because her time sheet was not signed by him yet. He told me that he did not sign Shrron's time sheet as well( same pay period ). If this the way should be paid then Sherron's pay should have been paid only 75.00 regular hours only. No, I don't think so, see how many over time she got paid? And even without his approval?

I don't deserve this kind of injustice and punishment simply because I did nothing wrong and I regret that I did not pay any attention before and did not make my own record about this unbelievable behavior. Now it is too late to check all her edited time sheets.

Beside, it will always hurt me is that when he told me that he'll give a very good review if I choose to leave village of Skokie and if not, if I choose to stay, then there is no way he CAN give me a good review. I asked him to give me the prove of his accusation about me. All he says was "I just know it". Being a supervisor dictating like this, I don't know what to say anymore. Like he told me that It's too bad I am your boss.

Sent from my iPad

Attachment # F

# VILLAGE OF SKOKIE
# EMPLOYMENT OPPORTUNITIES

| | |
|---|---|
| Medical Insurance | Vacation & Sick Leave |
| Dental Insurance | Credit Union |
| IMRF Retirement Benefits | Deferred Compensation Plan |
| Social Security Retirement Benefits | Group Life Insurance |

### Notice of Accepting Applications for the Position of:

## ACCOUNTS PAYABLE & PAYROLL SUPERVISOR
### Full-time
### Finance Department

**Annual Salary Range:** $67,392 - $86,012

**Brief Description of Duties:** Under the direction of the Finance Director, performs work of considerable complexity pertaining to the management of the Accounts Payable and Payroll functions. Responsible for the supervision and management of the employees of both functions in the execution of their duties. Makes recommendations for standardizing processes and procedures to improve efficiency of performance and workflow. Prepares reports, files quarterly tax returns and Illinois unemployment filings, annual unclaimed property report, 1099 and W-2 forms. Issues voucher checks, Automated Clearing House (ACH) remittance files, and Electronic Funds Transfer (EFT) remittance on a regular voucher schedule, as well as pre-issue when necessary. Maintains a high level of confidentiality in all areas. Performs other duties as assigned or required.

**Required Training and Knowledge:** Bachelor's degree in Accounting, Finance, Business Administration or related field is required. Minimum five years experience in accounts payable and payroll is required, preferably in Illinois local government. Minimum 2 years supervisory experience required. Any appropriate combination of education and experience will be considered. Must be proficient in Microsoft Office Suite with emphasis on Excel. Experience using financial and payroll enterprise resource planning systems. Demonstrated knowledge and understanding of internal control concepts, accounting standards, accounts payable and payroll principles/procedures is required. Must possess excellent verbal, written and interpersonal communication skills along with the ability to work effectively with subordinates and co-workers.

**Application Process:** Interested applicants should submit a Letter of Interest and Resume, and **MUST** submit a completed Village of Skokie Application for Employment by March 30, 2018 to: Village of Skokie Personnel Office, 5127 Oakton St., Skokie, IL 60077 or email to Human.Resources@skokie.org. Applications are available at www.skokie.org.

### APPLICATION DEADLINE: March 30, 2018

## The Village of Skokie is an Equal Opportunity Employer

Attachment # *G-1*



Cara Culmer, M.D.
Internal Medicine

Old Orchard Medical Office
9977 Woods Drive
Skokie, Illinois 60077
www.northshore.org

Phone (847) 663-8351
Fax (847) 663-1017

September 19, 2014

To whom it concerns:

I saw Theresa L. Fang today in my internal medicine office. She was tearful, describing effects that she attributes to her work environment. She describes difficulty sleeping, and is fearful that her anxiety episode of several years ago related to her work will repeat itself. We will resume medication for anxiety and sleep and I have offered for her to speak with a psychologist about this. It would be helpful to her situation to have next week away from work.

Most sincerely,

Cara Culmer, MD

A Teaching Affiliate of
the University of Chicago
Pritzker School of Medicine

Hospitals · Medical Group · Research Institute · Foundation

*Attachment# G2*

**Medical Assistance**

Since year 2013, Julian has mistreated and mentally tortured me by criticizing and insulting me; it is very painful and unfair.  So, I had to seek medical and mental assistance:

Medical visits to Dr. C Culmer M.D.
   9/19/2014: A week off-work notice to my office.
                Start taking Sertraline ever since.
   6/5/2015, 2/28/2018: getting Psychiatry and Psychologist referral visit.

Psychiatry - Natalie Schmitt PhD
    3 visits - 12/16/2015
              12/23/2015
              01/07/2016

Psychologist - Charles Pistorio PhD
    3 visits - 02/15/2016
              03/01/2016
              03/08/2016

Psychiatry - Brandy Grandall PhD
    8 visits -From September, 2019 through  November, 2019

*Attachment # G3*



# NorthShore
## University HealthSystem

## Medical Group

**Cara Culmer, M.D.**
Internal Medicine

Old Orchard Medical Office
9977 Woods Drive
Skokie, Illinois 60077
www.northshore.org

Phone (847) 663-8350
Fax (847) 663-1017

June 24, 2019

To whom it concerns:

I am writing on behalf of Theresa L. Fang, BD 12/28/46, regarding issues of depression and vertigo.

1) Can I confirm that Complainant has/had the condition on the relevant dates identified?
   - depression-- referred to psychology on 9/19/14 and 6/5/15 and requested a week off work in September, 2014.
   - hospitalized 2/15 - 2/23/18, rehabbed in skilled facility, had neuro and ENT follow up, underwent PT rehab, and was again referred to psycholgy for possible stress component.

2) Is Complainant's condition a physical, mental, or emotional impairment?
   - Depression -- emotional
   - Vertigo -- physical

3) Is complainant's condition minor? I don't feel these two conditions are minor:
   - depression -- I referred patient to psychology for tearfulness and sleep problems which she related to her work situation, and treated this with sertraline and a sleep med. Psychology referrals were placed on 9/19/14 and 6/15/15. She remains on sertraline
   - vertigo -- patient uses a cane with ambulating and I did complete a temporary handicapped parking permit application. She is to have neurology follow up.

4) Is complainant's condition permanent? Likely:
   Depression -- she is still on sertaline
   Vertigo -- she uses a cane for ambulation, still complains of vertigo. She is to see neuro again.

5) During the last two years did I place any restrictions on Complainant related to the condition?
   Depression -- In 2014 I did request a week off work for her during that stressful period
   Vertigo -- she was off work until return to work half days was requested 4/23/18 and she gradually increased to fulltime.

Thank you.

Sincerely
Cara L. Culmer, MD
*Internal Medicine Attending.*

A Teaching Affiliate of
the University of Chicago
Pritzker School of Medicine

Hospitals • Medical Group • Research Institute • Foundation

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Fang , Theresa                )
                              )
                              )
                              )
(Name of the plaintiff or plaintiffs)    )    CIVIL ACTION
                              )
            v.                )
                              )    NO._____
Village of Skokie             )
                              )
                              )
                              )
                              )
(Name of the defendant or defendants)    )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is _Theresa Fang_ of the county of _Cook_ in the state of _Illinois_.

3. The defendant is _Village of Skokie_, whose street address is _5127 Oakton Street_, (city) _Skokie_ (county) _Cook_ (state) _IL_ (ZIP) _60077_ (Defendant's telephone number) _(847) – 673-0500_

4. The plaintiff sought employment or was employed by the defendant at (street address) _5127 Oakton Street_ (city) _Skokie_ (county) _Cook_ (state) _IL_ (ZIP code) _60077_

1

5. The plaintiff [*check one box*]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _September_, (day)_____, (year) _2013_ .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☒ *has not*

    ☐ *has* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

    (i) ☒ the United States Equal Employment Opportunity Commission, on or about

    (month) _Jan_ (day) _20_ (year) _2020_ .

    (ii) ☒ the Illinois Department of Human Rights, on or about

    (month) _June_ (day) _4_ (year) _2019_ .

(b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☒ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

2

7.2     The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

☐     Yes (month)_____ (day)_____ (year) _____

☐     No, did not file Complaint of Employment Discrimination

(b)     The plaintiff received a Final Agency Decision on (month) *August*
(day) _*25*_ (year) _*2020*_ .

(c)     Attached is a copy of the

(i)  Complaint of Employment Discrimination,
☒ YES     ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision
☒ YES     ☐ NO, but a copy will be filed within 14 days.

8.     *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b)☒ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) *August* (day) _*25*_ (year) _*2020*_ a copy of which *Notice* is attached to this complaint.

9.     The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

3

(a) ☒ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).  ☒ YES  ☐ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒ other (specify): *Village of Skokie is not an Equal Opportunity Employer.*

VOS intentionally kept the job opening from me. They posted the hiring Ad during my hospitalization. Neither Finance nor Personnel mentioned a new position was created while I talked to them both weekly. They did not give me the opportunity to apply the new position.

13.     The facts supporting the plaintiff's claim of discrimination are as follows:

1) Personnel Christa advised me to submit a retirement notice, but I did not realize that "unfair Termination" which I could get unemployment benefit, while "Forced retirement" is not qualified for any unemployment benefit.

2) My job duties were not eliminated by SSA new system

3) VOS hired a younger employee to takeover my job duties

4) Julian was not allowing me to enter my office before 8:25 a.m. until the day I left!

14.     **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.     The plaintiff demands that the case be tried by a jury.  ☒ YES    ☐ NO

16.     THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☒    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒    Direct the defendant to (specify): Financial loss and Mental compensation.

5

_____

_____

_____

_____

_____

(g) ☒     If available, grant the plaintiff appropriate injunctive relief, lost wages,
liquidated/double damages, front pay, compensatory damages, punitive damages,
prejudgment interest, post-judgment interest, and costs, including reasonable
attorney fees and expert witness fees.

(h) ☒     Grant such other relief as the Court may find appropriate.


(Plaintiff's signature)

*Theresa Fang*

(Plaintiff's name)

*Theresa Fang*

(Plaintiff's street address)

*1712 Robin Lane*

_____

(City) *Glenview*    (State) *IL*    (ZIP) *60025*

(Plaintiff's telephone number) *(847) - 977.6276*


Date: *Nov 10, 2020*

6

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Theresa Fang<br>C/O Eugene Hollander<br>THE LAW OFFICES OF EUGENE K. HOLLANDER<br>230 W. Monroe<br>Suite 1900<br>Chicago, IL 60606 | From: Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-02474 | Shuwn Hayes,<br>Investigator | (312) 872-9733 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman/eh*                                     *8/25/2020*

| Enclosures(s) | Julianne Bowman,<br>District Director | (Date Mailed) |
|---|---|---|

cc:    **VILLAGE OF SKOKIE**
C/O Yvette Heintzelman
Clark Baird Smith LLP
6133 N. River Road
Suite 1120
Rosemont, IL 60018

# FILING SUIT IN A COURT OF COMPETENT JURISDICTION

## PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

## ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

## DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 S. Dearborn, Suite 1866
Legal & ADR, Suite 2920
Chicago, IL 60604
PH: (312) 872-9777
TTY: 1-800-669-6820
FILE REVIEWS & ENFORCEMENT FAX: (312) 588-1260

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 588-1260** or sent via email to **sylvia.bustos@eeoc.gov** (please chose only one method, no duplicate requests). **Be sure to include your name, address, phone number and EEOC charge number with your request.**

If you are the Charging Party and a Notice of Right to Sue has been issued, you may be granted access to your file:

> ➢ Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or
> ➢ After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) -**OR**- enough pages to determine whether it was filed based on the EEOC charge.

If you are the **_Respondent_** you may be granted access to the file **_only after_** a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, WILL NOT BE DISCLOSED TO EITHER PARTY.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request (Statues enforced by the EEOC prohibit the agency from making investigative information public).

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office by a requester.

Your file will be copied by **Aloha Print Group**. You are responsible for copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent in its entirety to the copy service, **and you will be responsible for the cost**. Payment must be made directly to Aloha Print Group, which charges 15 cents per page, plus a fee for shipping via FedEx.

(Revised 11/19/2019)

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | |

<u>Illinois Department of Human Rights</u> _____ and EEOC

*State or local Agency, if any*

| NAME (Include Mr., Ms., Mrs.)<br>Theresa Fang | HOME TELEPHONE (Include Area Code),<br>847-977-6276 |
|---|---|

| STREET ADDRESS | *CITY, STATE AND ZIP CODE* | DATE OF BIRTH |
|---|---|---|
| 1712 Robin Lane, Glenview, IL 60025 | | 12/28/46 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below)*

| NAME<br>Village of Skokie | NUMBER OF EMPLOYEES, MEMBERS<br>500+ | TELEPHONE (Include Area Code)<br>847-673-0500 |
|---|---|---|

| STREET ADDRESS<br>5127 Oakton Street, Skokie, IL 60077 | | COUNTY<br>Cook |
|---|---|---|

| NAME | | TELEPHONE (Include Area Code) |
|---|---|---|

| STREET ADDRESS | | COUNTY |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es)):*<br>☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER (Specify) | DATE(S) DISCRIMINATION TOOK PLACE<br>EARLIEST (ADEA/EPA)   LATEST (ALL)<br>4/5/19      8/12/19<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I. I was hired by Respondent on August 12, 2002. My last position was Senior Accounting Clerk.

II. On April 5, 2019, Respondent advised me that my position was being eliminated.

III. I am in the protected class (age 72) when Respondent advised me of the adverse job action.

IV. I believe that I have been discriminated against on the basis of age. I worked until August 12, 2019, at which time Stella Menegas, age 56, took over my job duties.

| ☒ I also want this charge filed with the EEOC.<br>I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge,in accordance with their procedures. | NOTARY. (when necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*Theresa Fang*  *Jan 15, 2020*<br>Charging Party Signature     /Date | SIGNATURE OF COMPLAINANT        DATE<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day. month, and year) |

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| form is affected by the Privacy Act of 1974: See Privacy act ment before completing this form. | ☒ IDHR | 2019CA2298 |
| # 19W0604.01 | ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) Theresa Fang | | TELEPHONE NUMBER (include area code) (847) 251-3165 |
|---|---|---|
| STREET ADDRESS 1712 Robin Lane | CITY, STATE AND ZIP CODE Glenview, IL 60025 | DATE OF BIRTH 12/28/1946 MM / DD / YYYY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT Village of Skokie | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area (847) 673-0500 |
|---|---|---|
| STREET ADDRESS 5127 Oakton St. | CITY, STATE AND ZIP CODE Skokie, IL 60077 | COUNTY Cook |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Age    Race    National Origin    Physical Disability | 7/2016    6/2019 ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

**S E E   A T T A C H E D**

Page 1 of 9

DCK

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 4 DAY OF June , 2019 X _Patricia Almaraz_ NOTARY SIGNATURE |
|---|---|
| PATRICIA ALMARAZ Official Seal Notary Public – State of Illinois My Commission Expires Sep 18, 2021 NOTARY STAMP B1 | X _Theresa Fang_ 6/4/19 SIGNATURE OF COMPLAINANT    DATE I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

THERESA FANG,                                    )
                                                 )
                                                 )
                    COMPLAINANT,      )   CHARGE NO.      2019CA2298
AND                                              )   EEOC NO.        21BA91316
                                                 )
VILLAGE OF SKOKIE,              ,        )
                                                 )
                                                 )
                                                 )
                                                 )
                    RESPONDENT.      )

NOTICE OF DISMISSAL
FOR LACK OF SUBSTANTIAL EVIDENCE

For Complainant                              For Respondent

Theresa Fang                                 Yvette A. Heintzelman
1712 Robin Ln.                               Clark Baird Smith, LLP
Glenview, IL  60025                          6133 N. River Rd.
                                             Suite 1120
                                             Rosemont, IL  60018


DATE OF DISMISSAL: September 3, 2020

1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report,
      the Department has determined that there is NOT substantial evidence to support
      the allegation(s) of the charge. Accordingly, pursuant to Section 7A-102(D) of the
      Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations (56
      Ill. Adm. Code. Chapter II, §2520.560) the charge is HEREBY DISMISSED.

2.    If Complainant disagrees with this action, Complainant may:

      a)  Seek review of this dismissal before the Illinois Human Rights Commission
          (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois,
          60601, by filing a "Request for Review" with the Commission by the request for
          review filing date below.  Respondent will be notified by the Commission if a
          Request for Review is filed.

      **REQUEST FOR REVIEW FILING DEADLINE DATE:**  December 7, 2020

          Or, Complainant may:

      b)  Commence a civil action in the appropriate state circuit court within ninety (90)
          days after receipt of this Notice.  A complaint should be filed in the Circuit
          court in the county where the civil rights violation was allegedly committed.

B2