RECEIVED AJS
12/11/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

FILED
12/30/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

In the United States District Court
For the Northern District of Illinois
Eastern Division

Theresa Fang,              )
        Plaintiff          )
                           )
                           )    No. 20-cv-06690
        V.                 )    Judge Franklin U. Valderrama
                           )
                           )
Village of Skokie,         )
        Defendant          )
                           )

## Amended Complaint For
## Employment Discrimination

Plaintiff, Theresa fang, in proper person, a former employee, complaints against
Defendant, Village of Skokie(VOS), former employer.

## I. Parties

1. **Plaintiff, Theresa Fang**, is an individual who is currently, and was at all
   relevant times herein, a resident at <u>1712 Robin Lane, Glenview, IL 60025</u>.

2. **Defendant**, **Village of Skokie** ( VOS), is a local municipal organization
   located at <u>5127 Oakton Street, Skokie, IL 60077</u>.

## II. Facts

3. **Plaintiff** is a former employee of a local municipal corporation
   called "Village of Skokie"(VOS).

4. **Plaintiff** is a 72 years old, Asian, female individual. Worked with
   Defendant for 17 years from 2002 to 2019.

5. **Defendant** is the plaintiff's former employer called Village of Skokie.

6. On April 5, 2019, Plaintiff was unexpectedly notified and terminated by the Defendant, VOS. Effective April 30, 2019. This is an **unfair termination.**

7. On April 8, 2019 early morning, Stella Menegas, the new hired employee, told Plaintiff that she **asked** Julian if VOS can extend Plaintiff's work time until August.

8. On April 10, 2019, Plaintiff was told by Defendant that they **granted Stella's request** to extend Plaintiff's working days to August on **condition** that Plaintiff would turn in a retirement notice. (attached A)

9. With the help of Christa Ballowe (Personnel Director). Plaintiff **against her will** and submitted the retirement notice on April 19, 2019. (attached B)

10. Thus, Plaintiff's **retiring in August** of 2019 was **not by choice,** Plaintiff **did not** plan to retire at that time.

11. On June 4, 2019, Plaintiff filed a complaint with the Illinois Department of Human Rights.

12.. On Sept 5, 2019, IDHR's **mediation** meeting was not successful.

13. In the mediation meeting, John Lackerby, the Manager of VOS, praised Plaintiff's 17 years hard working to the VOS, then he offered one month salary and benefit to Plaintiff.

14. On August 25, 2020, EEOC dismissed Plaintiff's case due to Defendant's request.

15. Under Defendant's mental torture, emotional abuse and unhealthy working environments, Plaintiff started to seek **medical** assistance as early as 2014.

16. Plaintiff visited physician and 3 other Psychiatrists and Psychologist through the year of 2019. (attached C1, C2, C3)

17. As a result of this, Plaintiff needed to take antidepressant medication for the rest of her life.

18. Plaintiff documented and reported most of Julian Prendi's (Finance Director ) mistreatments to the Personnel Office. But Defendant did nothing to protect Plaintiff.

**19**. In fact, the abusive situation continued and worsened. Julian intended to drive Plaintiff **insane** so Plaintiff would **quit** or get **fired.** (attached D1, D2, D3, D4)

**20**. Julian gradually withdrew Plaintiff's job duties. First, he took away Plaintiff's duty of reporting Fed and State's 941 income taxes etc.. Later, he also took away Plaintiff's duty of printing A/P checks.

**21**. Julian purposely did not connect new check printer to Plaintiff's computer. He tried to create a sense of Plaintiff's uselessness. Julian, the Finance Director, started to print checks by himself since year of 2016.

**22**. Plaintiff did not get a performance review for last 3 years before she was terminated by Defendant.

**23.** It is not true that most of Plaintiff's responsibilities were rendered obsolete by new computer system afterward.

**24** The data entry work actually only took 15 % to 20% of Plaintiff's entire workload, not what Julian said 90%.

**25.** In addition, using the new system, Plaintiff had to spend more time to check all other employee's entry works.

**26** Under the old system, Min Shulman or Marie Dham were responsible to check Plaintiff's input work, not Plaintiff

**27.** Defendant was lying to IDHR face to face on IDHR's 9/5//2019 meeting. Julian denied that he asked Plaintiff to **resign** in 2016.(attached E1, E2)

**28.**. Defendant falsely stated to EEOC that the new computer system eliminated 90% of Plaintiff's A/P data entry work.

**29.** Plaintiff has evidence to prove that her position has sufficient work-load not addressed by Defendant's new tech improvements. (attached G1, G2, G3 )

**30.** Plaintiff learned later that she was fallen into a **trap** which was set up by Defendant. Because of her **involuntary retirement,** Plaintiff lost the **right** to apply for unemployment benefits.

**31**. When Defendant granted Stella's request to expend Plaintiff's working

day until August, Defendant simply asked the Plantiff to agree. Then, why asking Plaintiff to turn in retirement notice?

**32** Plaintiff believed that Defendant knew that their termination of Plaintiff is ill-founded. It is not tenable.

**33**. Stella told Plaintiff on April 5, 2019 that she was scared to work by herself when Julian and Katie planned on a long vacation in July, 2019. Plaintiff **did not** ask Defendant to extend her time to work up until August, 2019. Stella did it for herself.

**34**. It was true that Plaintiff liked the idea of working up until August which was Plaintiff's anniversary month.

**35**. Plaintiff agreed to turned in the required retirement notice to Defendant is because Plaintiff felt that **being terminated** is a **disgrace** and so **shameful**, she can not accept the horrible truth that she's getting **fired** by Defendant.

**36.** The Defendant's "**trick**" is like "put the old wine in a new bottle", they would rather pay more money to hire a **younger** worker to do all of Plaintiff's job responsibilities.

## III. General Allegations

**37.** **Defendant does not provide Equal Opportunity.**

**38.** Defendant kept new **hire plan** from Plaintiff;

**39.** The period of a new **hiring plan** started from the time that George Van Geem, the former Finance Director, retired (July 2017) to the time that Defendant hired Stella(September 2018).

**40.** Defendant purposely posted **hiring Ad** during Plaintiff's hospitalization time, to **prevent** Plaintiff from applying for the new position.

**41.** Plaintiff's sick leave was from Feb 14, 2018 to the second week of April, 2018.

**42.** During Plaintiff's sick leave, Defendant's Personnel and Finance Department did not **mention** the hiring news to Plaintiff when she made her weekly calls to update the Defendant on her health.

**43.** Defendant's hiring Ad deadline was March 30. 2018.(attached H)

44. Based on Defendant's hiring Ad, at least 5 years of Payroll experience is required. Then, Defendant hired Stella who had no payroll experience.

45. Defendant offered no **promotion** to Plaintiff during her time employed by Defendant. Plaintiff is more qualified than the new hire as Plaintiff had at least 25 years payroll experience.

46. It is not true that the reason that Defendant terminated Plaintiff is due to a Financial **budget** problem.

47. Defendant hired a **younger** Stella and offered much **higher pay. (attached H)**

48. Defendant created a new position called A/P and Payroll Supervisor to cover Plaintiff's job duty and then eliminated her position.

49. This action is "**graft**". Defendant used a takeover technique and succeeded in grafting to play a sly trick.

50. The termination was a **retaliation** and **well-planned discrimination.** On April 5, 2019, Julian dismissed Plaintiff's **retaliation accusation.** Julian only replied to Plaintiff, "**If you think so."** ( attached A)

51. Defendant is responsible for Plaintiff's suffering due to mistreatments under Julian's micro supervision for 6 years, from 2013 to 2019.

52. Plaintiff's termination was a **retaliation** from Julian who had planned to terminate Plaintiff since many years ago.(attached D1,D2,D3,D4)

53. On 12/2/2015 late afternoon, there was an incident that occurred between Plaintiff and Julian. An argument started due to Julian's wrongful accusation and his insulted behavior.

54. On 12/5/2015, Plaintiff got suspended for two days without pay by Julian. Julian by then was Assistant Finance Director.

55. On 12/7/2015 about 1:00 p.m. Plaintiff was called in to George's office, George told Plaintiff that he was on Plaintiff's side." **I am on your side"** was the exact word George said to Plaintiff.

56 Finance Director George told Plaintiff that he was on Plaintiff's side which means Plaintiff was **right** and **should not get suspended.**

57. Thus, Defendant allowing Julian to use his power misjudged and

punished Plaintiff and ignored Julian's misconduct. His act is **unfair** and **unlawful**.

58. After the incident on 7/14/2016, Julian unfairly asked Plaintiff to **resign,** but he **denied** and **lied** about this matter in IDHR's 9/5/2019 mediation meeting.

59. Plus, for the same incident, Plaintiff was being left out for new computer BS&A system's training. Defendant treated Plaintiff **unequal** and **different**.

60. Plaintiff had a hard time to explain to those coworkers who were wondering why Plaintiff never joined the training. Julian's insulting and humiliating actions had a tremendous negative impact on Plaintiff's life.

61. Regarding Plaintiff's harassment allegations to EEOC, Defendant admitted that even if these incidents are assumed true, they do not rise to the **level** of actionable harassment.

62. Defendant indeed established a **hostile** environment. The **level** of harassment is **tremendous**.

63. May be one or two mistreatments do not rise to the level of actionable harassment, but the years's accumulated facts can rise bigger level than you imagine.

64. Under Julian intentionally created harassing environment, Defendant not only damaged Plaintiff's **health,** but also cost her **job.**

65. Defendant's harassments and wrongful termination plus **tricking** Plaintiff into an **involuntary** retirement is unlawful and violated the Federal law based on **age**, **race** and **disability**.

## Count I
### Discrimination based on Age

66. Plaintiff is a 72 years old Asian female and began working for Defendant in 2002 as a Sr. Accounting Clerk. She was terminated in August 2019.

67. Plaintiff is being discriminated based on **age** by Defendant because Plaintiff has been treated differently than other coworkers.

68. Plaintiff was 72 years old when Defendant terminated her and hired Stella who was 56 years old.

69. Defendant commits **age discrimination** when they hired Stella who is **younger** than Plaintiff.

70. Defendant did not **promote** Plaintiff to fill in the new position, even though she is much more qualified than the new hire, Stella.

71. Stella is much **younger** than Plaintiff and she is Caucasian and not Chinese.

72. Plaintiff was asked when she would decide to **retire** by then Finance Director George Van Geem in 2016. Plaintiff's answer was very clear; " Retirement is not in my plan yet".

73. Then, George said "I think I'd leave here before you". George indeed did retire in July 2017.

74. Rumor spreads around Village Hall that Plaintiff is older than Julian or Katie's mother. It's **harassing**, but when people regard this to Plaintiff, Plaintiff had to take it as a joke.

75. On 7/14/2016, Plaintiff found out that the payroll clerk Katie Zonca did not record her 3 days of vacation time into the payroll system. Instead of reporting her wrong doing to the Finance Director, Plaintiff chose to ask Katie herself.

76. When Julian learned of this incident, he determined that Plaintiff was the **perpetrator**. He cut off all of Plaintiff's payroll works and asked Plaintiff to **resign** and he did nothing to Katie.

77. Defendant punished Plaintiff while not holding the guilty party, Katie accountable. Defendant's treatment of Plaintiff was **unequal** and **different** simply because Katie is **younger** and she is not Chinese.

78. Once, Plaintiff was accused of taking a morning break for 10 minutes longer than usual. Julian shouted to Plaintiff in front of other coworkers and asked when Plaintiff was going to make up for the 10 minutes.

79. Plaintiff told Julian that she wouldn't take the next day's break. Then, Plaintiff asked Julian if he ever noticed Katie taking daily multiple breaks and longer lunch times. He replied "**I see you, I didn't see her!**"

80. Again, the treatment between Plaintiff and Katie is **different** and **unequal**. Katie is **younger** than Plaintiff. She is a 40 year old Caucasian woman and

she is not Chinese.

81. Defendant's mistreatments and discriminations which included wrongful termination are unlawful under the federal ADEA law based on **age.**

## Count II
## Discrimination based on Race

82. Plaintiff is a 72 years old Asian female and began working for Defendant in 2002 as a Sr. Accounting Clerk. She was terminated in August 2019.

83. Plaintiff is being discriminated based on **race** by Defendant because Plaintiff has been treated differently than other coworkers.

84. Defendant hired Stella who is much younger than Plaintiff and she is **Caucasian** and not Chinese.

85. Julian purposely forbid Plaintiff from entering her own office before 8:25 a.m. while the other coworkers had no such order from him.

86. Plaintiff was the **only employee** to receive such treatment. This insulting treatment is harmful and different.Because Plaintiff is **Chinese** not white.

87. When Plaintiff found out that Katie did not record her vacation records into the payroll system. Julian asked Plaintiff to **resign** but did not ask Katie to resign.

88. Julian asked Plaintiff to **resign** and not ask Katie to resign, because she is younger than Plaintiff and she's **not Chinese** but of white-Irish descent.

89. Defendant falsely stated to EEOC that Plaintiff's job duties were mostly eliminated by BS&A new system.

90. The BS&A system is not designed only for **Plaintiff**. The new system affected every department and every other of the Defendant's 500 employees.

91. Plaintiff was the **only employee** to get discharged. Plaintiff believes that the different treatment is simply because her **race**. She is old, she's Chinese, and she is not white.

92. Defendant's harassment and wrongful termination is unlawful and violated Federal law and against Human Rights based on **race**.

## Count III
## Discrimination based on Disability

93. Plaintiff is a 72 years old Asian female and began working for Defendant in 2002 as a Sr. Accounting Clerk. She was terminated in August 2019.

94. Plaintiff is being discriminated based on **disability** by Defendant, because Plaintiff has been treated differently than other coworkers.

95. Since year of 2014, under Julian's abusive supervision, Plaintiff started to seek medical assistance and started to take **antidepressant** drugs.

96. On February 14, 2018, Plaintiff got dizzy and almost fainted in the office, Defendant called emergency services and sent her to the ER of Skokie hospital.

97. When Plaintiff returned back to work, Plaintiff became physically disabled. She had to **walk with a cane** to keep her body balanced.

98. Plaintiff has no problem performing her major job tasks or her essential job functions.

99. Defendant failed to adjust to one of Plaintiff's job assignments which was Plaintiff having a hard time to handle the physical work.

100. Every Wednesday by 10:00 a.m. Plaintiff has to stamp and carry out Defendant's outgoing mail to the outside Village Hall's postal mail box.

101. Almost 80% of the time, (it depends on the quantity of the mail) Plaintiff had to ask coworkers to help carry out the mail.

102. After Plaintiff learned that people were discouraged to help her. Plaintiff then one day asked Sharron Wang, Collection Division's supervisor, for help.

103. Sharron replied by shouting, "Everybody is busy now! Just call Jim (Jim Puff, the public works Department) to come to help you!"

104. Everyone could hear her voice, including Julian. But no one came out to help Plaintiff.

**105.** Defendant failed to reasonably **accommodate** Plaintiff's physical disability.

**106**. Defendant did not consider Plaintiff's safety issue, such as passing two front doors and go down outside stairs; especially during the winter time.

**107**. Defendant violated ADA protection law. Plaintiff believes that her physical disability is another reason for her to get terminated and did not get a promotion.

**108.** Defendant's mistreatments and discriminations, which included wrongful termination are unlawful under the federal law based on **disability.**

**109**. **Plaintiff demands a Jury trial.**

## III. Prayer For Relief

**Wherefore,** Plaintiff prays for the following relief:

1. For compensatory loss, for past, present, and future in excess of $ 75,000.

2. For emotional damages for past, present, and future in excess of $ 75,000.

3.For such other further relief as this court deems just and equitable**.**

Dated this 10th day of December, 2020

Theresa Fang
1712 Robin Lane
Glenview, IL 60025
theresafang1228@yahoo.com

Attachment # $A$

## Theresa Fang

**Subject:**                    FW: FYI - the day I got notice ( 4/5/19 and 4/10/19)

**From:** Theresa Fang <theresafang1228@yahoo.com>
**Date:** April 19, 2019 at 2:02:11 PM CDT
**To:** christa.ballowe@skokie.org
**Subject: FYI - the day I got notice ( 4/5/19 and 4/10/19)**


After I got the "I have to leave VOS " notice (Stella was with us) from Julian about 4pm
on 4/5/19, I was told that my last day with Village will be on April 30, 2019. Julian told me that
they made this decision more than two months ago due to their budget my position is no longer
exists, they planed to create a new position to do the accounting analysis job. I was shocked and
not happy about this. I asked Julian that if they made decision a few months ago why not let me
know sooner? His answer was only three words "I am sorry!" About 5 o'clock, before we left
office, I told Stella that I always thought that one day when I have to leave here, I wish I could
walk out gracefully and leave at or about my anniversary time, so I can easy to calculate my
retirement stuffs.

About 9:30 in the morning on 4/10/19, Julian told me that Stella had told him regarding my
retirement concern, so he made an option for me that is unless I send him a writing notice that I
plan to retire in August 2019 which will mark my 17th anniversary I worked for VOS, otherwise
I have to leave the end of April 2019. I told him that before I do this I have to talk with my
husband and Christa, since Christa was not available till the following Monday so he allowed me
to send in the notice on the week of 4/19/19. While we were talking about this issue I asked him
two questions : 1) I've been work with finance department for over 16 years, I was hired to do all
the jobs which Stella now is doing, if VOS has budget difficulty, why you pay higher rate to her
to do the same job? 2) Last time he wanted me to leave (2016) he told me that "If you lease now
I'd give you a very good reference, if not, when we start our new system you will all on your
own, you are not going to have any training". Sure he really did so, this was a huge
insulting,humiliating to me and deeply hurt me forever. When I mentioned those my past
"wounds", he got very mad and refusing to continue our conversation and continuing kept
saying " stop, that's it " and then he raised his voice accusing me that I did not even have the will
to learn the new system and brought up that after he trained me "hours" and I was not able to
produce one preissue check listing for him. That's not true. Actually, up to now I still don't know
how to do it. Why? I guess that's because my computer never set up that kind of features, in
other words, my computer don't have the "access" to allow me to do it.

Please apply this note to my personal file.
Thank you and have a nice holiday weekend!


Sent from my iPad

Attachment # B

To whom it may concern:

This letter is to notify you of my intent to retire from Village of Skokie on August 12, 2019. This would mark my 17 year anniversary with the Village.

During my many years of service here, I've made many friends and learned a great deal from my colleagues. Now I have to say good bye to everyone and hope this is the right time to move on to the next chapter of my life.

Sincerely,

Theresa Fang    4/19/19

Theresa Fang

Finance Dept

Attachment *C 1*


University HealthSystem

**Medical Group**

**Cara Culmer, M.D.**
Internal Medicine

Old Orchard Medical Office
9977 Woods Drive
Skokie, Illinois 60077
www.northshore.org

Phone (847) 663-8351
Fax (847) 663-1017

September 19, 2014

To whom it concerns:

I saw Theresa L. Fang today in my internal medicine office. She was tearful, describing effects that she attributes to her work environment. She describes difficulty sleeping, and is fearful that her anxiety episode of several years ago related to her work will repeat itself. We will resume medication for anxiety and sleep and I have offered for her to speak with a psychologist about this. It would be helpful to her situation to have next week away from work.

Most sincerely,

Cara Culmer, MD

A Teaching Affiliate of
the University of Chicago
Pritzker School of Medicine

Hospitals · Medical Group · Research Institute · Foundation

*Attadimiut: C-2*

## Medical Assistance

Since year 2013, Julian has mistreated and mentally tortured me by criticizing and insulting me; it is very painful and unfair.  So, I had to seek medical and mental assistance:

Medical visits to Dr. C Culmer M.D.
   9/19/2014: A week off-work notice to my office.
          Start taking Sertraline ever since.
   6/5/2015, 2/28/2018: getting Psychiatry and Psychologist referral visit.

Psychiatry - Natalie Schmitt PhD
   3 visits - 12/16/2015
           12/23/2015
           01/07/2016

Psychologist - Charles Pistorio PhD
   3 visits - 02/15/2016
           03/01/2016
           03/08/2016

Psychiatry - Brandy Grandall PhD
   8 visits -From September, 2019 through  November, 2019

*Attachment C 3*



University HealthSystem

## Medical Group

Cara Culmer, M.D.
Internal Medicine

Old Orchard Medical Office
9977 Woods Drive
Skokie, Illinois 60077
www.northshore.org

Phone (847) 663-8350
Fax (847) 663-1017

June 24, 2019

To whom it concerns:

I am writing on behalf of Theresa L. Fang, BD 12/28/46, regarding issues of depression and vertigo.

1) Can I confirm that Complainant has/had the condition on the relevant dates identified?
  - depression-- referred to psychology on 9/19/14 and 6/5/15 and requested a week off work in September, 2014.
  - hospitalized 2/15 - 2/23/18, rehabbed in skilled facility, had neuro and ENT follow up, underwent PT rehab, and was again referred to psycholgy for possible stress component.

2) Is Complainant's condition a physical, mental, or emotional impairment?
  - Depression -- emotional
  - Vertigo -- physical

3) Is complainant's condition minor?  I don't feel these two conditions are minor:
  - depression -- I referred patient to psychology for tearfulness and sleep problems which she related to her work situation, and treated this with sertraline and a sleep med.  Psychology referrals were placed on 9/19/14 and 6/15/15.  She remains on sertraline
  - vertigo -- patient uses a cane with ambulating and I did complete a temporary handicapped parking permit application.  She is to have neurology follow up.

4) Is complainant's condition permanent?  Likely:
  Depression -- she is still on sertaline
  Vertigo -- she uses a cane for ambulation, still complains of vertigo.  She is to see neuro again.

5) During the last two years did I place any restrictions on Complainant related to the condition?
  Depression -- In 2014 I did request a week off work for her during that stressful period
  Vertigo -- she was off work until return to work half days was requested 4/23/18 and she gradually increased to fulltime.

Thank you.

Sincerely
Cara L. Culmer, MD
*Internal Medicine Attending.*

A Teaching Affiliate of
the University of Chicago
Pritzker School of Medicine

Attachment D1

Some example of Julian's abusive treatments:

\*\*After ten years working with VOS (since August 12, 2002), VOS hired Julian
in the Fall of 2013 as plaintiff's supervisor. His title then was Assistant Finance director.
Almost immediately, Plaintiff started getting hard time from him.
Under Julian's micro supervision, not only Plaintiff had to accept his unreasonable
accusations but also had to bear his double standard, mistreatments, numerous yelling,
insulting, harassing and abusing behavior in front of coworkers. The abuses include but
not limited to, not allowing to discuss anything with George, the former Finance Director;
not allowing Plaintiff to make tea for George even George ask her to do so. He told Plaintiff
that making tea would be wasting her work time.

Who doesn't make tea or coffee at their office? Many times, Julian himself
went out to purchase Starbucks for himself during the working hours. Once, in the
morning working hour, he even went to Walmart and bought a jacket due to VOS having a
heating problem.

\*\* One late afternoon, about 4:30 p.m., Julian asked plaintiff to prepare payroll deduction
files and asked her to upload those files to the bank and agencies, then he walked out
of the office. As soon as he left the office, Plaintiff received a complaining call from a
Skokie resident. It took plaintiff almost 15 minutes to resolve the caller's problem.
When Julian returned to the office, he asked her if she uploaded the file yet. After he heard
her "not done yet" answer, he immediately raised his voice and said "I know it, I know
it, you purposely not wanting to finish the job! You just want to against me!" Plaintiff tried
to explain what had happened and asked him to check her phone record about how long
she's been on the line. No, he would not listen. He continued accusing her that she didn't
finish work because she was simply, purposely against him and challenged his power.
He even criticized her that she did not know how to **prioritize** her job. Plaintiff asked
him to give her a reason to prove that how and why he thinks that she was against him.
"I just know it" was his answer. He cannot prove it. This is a **fabricated charge.**

There is an old saying: "If you are out to condemn somebody, you can always trump up
a charge".

When this incident happened, our then Finance Director George Van Geem was in his
office, he must have heard everything but he failed to stop Julian's abusing behavior.

\*\* Once, Plaintiff asked a coworker to help her to push a cabinet to the right place so
she can open the drawer. It was Noor ( IT department) who helped her and it was done
Just in seconds. When Julian noticed that the cabinet has been moved about 1 foot away
from her desk, he got mad and in front of Katie, he started shouting and continuously

Attachment D2

accusing plaintiff for more than 10 minutes. Julian said that Plaintiff was using other
people's working time to do her **personal** thing. Plaintiff was so humiliated by his
accusation and asked him if they could talk privately. He refused and said "No, I just
want to know that you are not lying". Plaintiff did not lie. She believes that Katie was
the one who told him the moving cabinet's story. Imagine, Plaintiff only asked someone
to give her a hand, she was not doing a **crime**. Julian's abusive insulting behavior was very
**hard to bear.**

** **Plantiff was doing her job, but was accused of doing her personal stuff**
One day, Julian saw plaintiff arranging her own S-125 Medical Care receipts and
preparing the reimbursement claim Form. He accused her that She was doing her
personal stuff. Preparing and processing the claim for the employee members,
including herself was her job duty. But when Julian saw that she was doing her own
claim, **It's a crime.**

** One time, Plaintiff called a restaurant owner and told him that based on his tax
paper filing, he over paid to VOS. Plaintiff suggested that he can take those credit
for the following month. Julian accused her that she did not ask him first and she
put VOS's money away. Plaintiff didn't understand why she was allowed to collect
underpaid money from the payer and not allowed to adjust account balance of
the overpaid payer?

** Very often Katie came to work in the morning with wet hair. Plaintiff know that there's
no rule against employee who comes to work with wet hair. But plaintiff was allergic
to Katie's shampoo, not only because the smell causing her headache but the chemical ingredients
made her eyes tearful all morning. Plaintiff asked Julian once if he could help her to change
the situation. All she got from him was "**What's wrong with that? I can't smell her, but
I can smell you**". How **rude** he was! Julian not only ignored her suffering but also **insulted**
her terribly.

**Above are some examples of "hell" under Julian's micro supervision.**

Though, based on EEOC's statement that VOS states that all Julian's behavior
towards Plaintiff were not over the normal level. VOS does not treat all employee
equally. VOS allows superior to abuse fellow employee and chose not to care
about the abused one. VOS is violated federal law and against Plaintiff's
Human Rights.

Attachment $D3$

**Theresa Fang**

**Subject:**　　　　　　　　FW: Injustice

**Date:** Sept 6, 2016 at 6:15 AM

**Subject: Re: Injustice**

Hi Christa,

It's been four weeks since Julian and I had an emotional talk. Here is what they did to me- they cut off- I mean they had MIS blocked my most part of payroll excess through HTE. I feel that this action and treatment as a punishment due to my accidentally found out Katie's wrong doing. I see this is a big insult and injustice to me.

I asked both George and Julian to check Katie's April 22, 2016 pay record and her time sheet, because I knew this particular day she was off. I heard nothing from them and I believe that there's no adjustment made either. To prove that I was right so I got a copy of evidence to send to you. I strongly believe that whether this not so honest behavior were intentionally planed or not, It got to be stopped. Now, it looks that there 's some cover up there and even secured her ability and power to do any edit work on her own time sheet and her pay record. I bit there must have some corrected sign on her July1 and July 8 time sheet. This is my guess and I am not interested to take a look on those edited time sheets simply because it's all unbelievable.
Again, I don't buy what Julian told me that the reason she did not pay her that 2 days vacation instead pay 2 days regular was because her time sheet was not signed by him yet. He told me that he did not sign Shrron's time sheet as well( same pay period ). If this the way should be paid then Sherron's pay should have been paid only 75.00 regular hours only. No, I don't think so, see how many over time she got paid? And even without his approval?

I don't deserve this kind of injustice and punishment simply because I did nothing wrong and I regret that I did not pay any attention before and did not make my own record about this unbelievable behavior. Now it is too late to check all her edited time sheets.

Beside, it will always hurt me is that when he told me that he'll give a very good review if I choose to leave village of Skokie and if not, if I choose to stay, then there is no way he CAN give me a good review. I asked him to give me the prove of his accusation about me. All he says was "I just know it". Being a supervisor dictating like this, I don't know what to say anymore. Like he told me that It's too bad I am your boss.

Sent from my iPad

**From:** Theresa Fang <theresafang1228@yahoo.com>
Attachment $D4$
**Date:** August 9, 2016 at 6:58:44 AM CDT
**To:** "christa.ballowe@skokie.org" <christa.ballowe@skokie.org>
**Subject: In Trouble**

Good morning Christa,

As I expected, Julian asked me to talk over on what had happened on July 14, 2016 yesterday late afternoon. He was very upset with me because he was convinced that I did this purposely when he was not in the office, like last time I was moving my cabinet when he was out for lunch. He claims that I am using his absence as the opportunity liberally to challenge his authority.

He told me why Katie's July 1 and July 8 two days vacation were not recorded. It was simply because by then he did not approve her time sheet yet, my question is with no approval time sheet she can pay herself all regular hours?

He told me that he'll stop me doing any job related with payroll and gave me two choices: 1) I plan to leave V of S, then he 'll give me a good review. 2) If I choose to stay, not only I can't have a good review and more likely I will be on my own when the challenge time comes (change our software system).

During the conversation, I learned that some work previously I was allowed and so I did it for many years, he told me that I was not doing it right. One time I called a restaurant owner and telling them that base on their filing report they over paid to us and I suggested that they can take those credit for the following month reporting. I was accused by him that I did not to ask him first and put Villages's money away. I don't know why I was allowed to call and collect under pay money from the payer and not allowed to adjust the over paid payer?

My big surprise is that for past three years, no matter what happened between us, he made his mind to think that it was always me to challenge his power. He told me that he doesn't believe those happenings were incidents, they all happened because I intended to do so. I told him that

my experience is that no matter what way I do, he'll always tell me the other way is the way it should be.

I don't know if you ever did something about this yet? If not, please hold a little while, since Julian strongly think that Katie wouldn't do such thing and I suggested that he should take a good look about her time records and I even asked him why she took many full days off and there is no one full vacation day record for the past seven months? He gave me no answer, all he concentrated was my part of mistake. Further more he change the way how to fill out our time sheet, from 8:30 a.m. to 5:00 p.m. period, any late time in or early leave time will not be indicated, only use lunch or next day to make up.

I am so sorry to bother you and take your time again. I really don't know what today will be or could be any more. Thank you and have a nice day.

Theresa

*Attachment E1*

**From:** Theresa Fang <theresafang1228@yahoo.com>
**Date:** September 17, 2019 at 8:47:56 AM CDT
**To:** toye.barfield@illinois.gov
**Subject: Mediation 9/5/2019**


Dear Toye,

Thank you very much for your effort trying to settle an agreement between me and the Village of
Skokie. Unfortunately, we could not make it happen due to my physical exhaustion and the
Village's attitude, I just can not make the decision.

There are several points I have to make:
1) I learned that there's no justice that I'll get from them through you and I did not get
   any answer from them regarding your complainant questionnaires # 8 (my answer
   sheet page 2).
2) Julian was NOT honest
   a) I was shocked that he denied in front of John that he did not ask me to "leave"
      (to quit my job) when I found out that Katie was repeatedly not recorded her off
      days into payroll system. It's unbelievable. He wanted me to leave, it was a big and
      a very hurtful thing for me and I can never forget it.
   b) He said he trained me. Yes, he did some training but it was very minimal. My
      point is for all the 5 weeks training period, what I got was the shameful feeling
      and the stress was tremendous.
   c) I can and I have right to go in HTE payroll accrual option to check employee's
      accrual hours when I got their request. Julian never ever told me that I was not
      allowed to get in after he deleted all the other accesses. I was hired by the
      Village to do my position's job duties which included many payroll works. HTE
      system was personally designed for me to have access to payroll. What the
      heck, after I worked 11 years for the Village, suddenly I was accused by Julian
      why I had access to the payroll. Julian accused me that I checked Katie's accrual
      hours which I regret that I did not to do so sooner. As a supervisor to both Katie
      and I, Julian was intentionally negligent to Katie's behavior and used double
      standard to target me unfairly.
3). Yes, the Village did a favor to me to let me work till to August 12th - my anniversary
    day. But the Village must know very well that the other true reason was coming
    from Stella's request. Stella told me that she was so scared that both Julian and
    Katie were both planned 3 weeks long vacation during July, she wasn't sure that
    she can handle everything by herself. So I helped and was used by the Village too.
    It was mutually beneficial.
4) The new system sure can save my data entry time, but I'd rather enter all the
   entries by myself than to check everybody's entries. Say if entering one invoice
   needing 30 seconds, to check and verify this same invoice through attachment,
   it would take much more than 30 seconds.( please try it) What I want to say is that
   the new system does not save time if you really did check each one of them.
5). John told me today that the Village do appreciated my service and good work.
    I don't think so. Julian planed many years trying to get rid of me. Finally, he used a

*Attachment E-2*

position name change trick and his wish succeeded. As a result,
I endured many years of his mistreatments, hard time and his insulting in front other
co-workers. etc. As a result, my health situation is getting worse than ever. By Dr.
J. Taber's order, I restarted seeing psychiatrists for my depression and also doing
physical therapy for my disability. So my point is that a good employer would never
mistreat or abuse a good worker. Period.

6) a) The Village's operating funds are all come from so called "public funds", Isn't
   it shameful that the Village hired some one who is not honest enough,
   mistreat and abuse the good worker for years and cover up the one who really
   deserves a "discipline". In this case, Julian was at fault as well.

   b) The Village eliminated my position and claimed that they have no money to let
   me stay but instead they hired a new position to do all my job and pay much
   higher salary. If the Village really appreciate my job performance, why not
   promote me or at least let me stay in my old position to save Village's money?
   The Village do have "Public fund " money to waste. I consider this action is not
   "appreciation", it is "discrimination".

Thank you again and have a nice day!


Theresa Fang
Charge No: 2019CA2298


c.c. Christa Ballowe
     John Lockerby

Attachment G 1

# VILLAGE OF SKOKIE

# POSITION REVIEW QUESTIONNAIRE

**General Information**

(Please type or print your responses.)

Position Title: Sr Accounting Clerk

Department:   Finance         Division:   Accounting

Supervisor's Name & Title:   Sandra  Collins  –  Assistant Finance Director

Name of Employee Completing this Questionnaire:   Theresa Fang

Date Questionnaire is being completed:         9/14/07

Briefly state what you believe is the overall purpose of this job.  In other words, **why does this job exist**?

**This job's primary duties are processing disbursements, reporting, posting cash receipts and bank reconciliations.**

**The majority of my time is spent in the area of daily routines, bi-weekly payroll deduction transmissions, monthly journal entries, all bank reconciliations, Section 125 and disbursement processing.**

_____

_____

281943

**DUTIES AND RESPONSIBILITIES:**

*Attachment G-2*

1. Please list and describe the essential functions of the job you perform. These are tasks that are actually being done now, not what should be done or what was work once done.

   In general, one or more of the following apply to essential functions:
   - It is performed frequently.
   - It is a necessary function that if not performed, the Village would be adversely impacted.
   - It is a highly specialized function requiring special expertise or ability.

2. Estimate the percentage of time spent performing each separate function (total should equal 100%) AND indicate if this function is performed ("D" daily), ("W" weekly), ("M" monthly), ("Q" quarterly), or ("Y" yearly).

| *EXAMPLE* | Essential Functions of the Position | *EXAMPLE* | Freq. | % of Job |
|---|---|---|---|---|
| *Answering Phones* | | | *D* | *70%* |
| *Budget Preparation for Division* | | | *Y* | *10%* |

| Essential Functions of the Position | Freq. | % of Job |
|---|---|---|
| *Clearing cancel checks for general account *Rec Bank/System c/s cks* | D ✓ | |
| *Data entry of check requests and purchase orders */Finance Dept only:* | D ✓ | |
| *Cash bond refund process-edit vendor's name and address | D ✓ | |
| *Posting cash receipts △ | D | |
| *Petty cash(checking) quick check/processing | D | |
| *Section 125 plan implementation and process claims | D ✓ | |
| *Responding inquires | D ✓ | Total 40% |
| *B*W is Bi-weekly | | |
| *Reporting and processing Voucher List *insert/mailing checks* | *B*W ✓ | |
| *Prepare payroll deduction's wire transfer sheets. *Submit payroll deductions file thru website-ICMA 401(a),457, RHS and nationwide etc... | *B*W ✓ | |
| *Prepare payroll FOP and Credit Union files by fax and by mail. △ | *B*W ✓ | Total 15% |
| *Reconcile all bank accounts | M ✓ | |
| *Reconcile petty cash (cash box) account and make reimbursement check request | M | |
| *Prepare Library IMRF billing | M ✓ | |
| *Prepare IMRF and IMET file reporting thru website | M ✓ | |
| *Preparation of spreadsheets to support accounting function such as CTA collections, mail room postage usage and investment accounts interest earnings | M | |
| *Month end journal entries-payroll, postage, taxes, interest earnings etc.... | M ✓ | Total 20% |
| *Sorting in/out mails* | W ✓ | *new* |
| *Old escrow bond refunds study-to verify, locate holders to prevent them from going to unclaimed property | Q ✓ | |
| *Outstanding checks study-to locate vendors thru phone calls, mails and internet research | Q ✓ | |
| *Reporting Form 941-quarterly payroll income tax return | Q | |

281943

*Attachment G3*

| Additional Job Duties and Responsibilities | Freq. | % of Job |
|---|---|---|
| *Cash applications | Q | |
| *Prepare IL-941-Illinois Quarterly Withholding Income Tax Return | Q | Total 15% |
| *Support annual audit | Y ✓ | |
| *Research unclaimed property | Y ✓ | |
| *Reporting Form 940-annual payroll income tax return | Y | |
| *Maintain and update all accounting storage records | Y ✓ | |
| *Reporting IL-W3-Illinois Annuual Withholding Income Tax Return | Y | |
| *ReportingForm WT-7 – Wisconsin Employers annual reconciliation | Y | Total 10% |
| Managing VOS Food/Beverage local taxes—since Sept 2015 Open payment mails, stamping recived dates, copy checks and filing papers. Book Vendor payments, update Vendor paid records. Communicating with late pay Vendors. Prepare over due letters etc---- | M ✓ | Total 25% |

**Check one definition that best describes the position's ability to make independent decisions:**

☐ Immediate Supervision – Work is performed in accordance with established guidelines or procedures. Assignments are given with explicit instructions or are so routine that few deviations from established practices are made without checking with the supervisor.

X General Supervision – Judgment is necessary in selecting appropriate established guidelines to follow. Interpretation of general administrative or operational policies and procedures is sometimes necessary.

☐ Direction – Work requires frequent interpretation of policies, and/ or guidelines. Discretion is required in the selection of appropriate resources to use in accomplishing assigned work.

☐ General Direction – Initiative and resourcefulness are necessary in performance of the job. Judgment is required in applying concepts, plans, and strategies which may deviate from traditional methods and practices.

281943

Attachment **H**

# VILLAGE OF SKOKIE
# EMPLOYMENT OPPORTUNITIES

| | |
|---|---|
| Medical Insurance | Vacation & Sick Leave |
| Dental Insurance | Credit Union |
| IMRF Retirement Benefits | Deferred Compensation Plan |
| Social Security Retirement Benefits | Group Life Insurance |

### Notice of Accepting Applications for the Position of:

## ACCOUNTS PAYABLE & PAYROLL SUPERVISOR
### Full-time
### Finance Department

Annual Salary
Range:                    $67,392 - $86,012

Brief Description
of Duties:        Under the direction of the Finance Director, performs work of considerable complexity pertaining to the management of the Accounts Payable and Payroll functions. Responsible for the supervision and management of the employees of both functions in the execution of their duties. Makes recommendations for standardizing processes and procedures to improve efficiency of performance and workflow. Prepares reports, files quarterly tax returns and Illinois unemployment filings, annual unclaimed property report, 1099 and W-2 forms. Issues voucher checks, Automated Clearing House (ACH) remittance files, and Electronic Funds Transfer (EFT) remittance on a regular voucher schedule, as well as pre-issue when necessary. Maintains a high level of confidentiality in all areas. Performs other duties as assigned or required.

Required
Training and
Knowledge:        Bachelor's degree in Accounting, Finance, Business Administration or related field is required. Minimum five years experience in accounts payable and payroll is required, preferably in Illinois local government. Minimum 2 years supervisory experience required. Any appropriate combination of education and experience will be considered. Must be proficient in Microsoft Office Suite with emphasis on Excel. Experience using financial and payroll enterprise resource planning systems. Demonstrated knowledge and understanding of internal control concepts, accounting standards, accounts payable and payroll principles/procedures is required. Must possess excellent verbal, written and interpersonal communication skills along with the ability to work effectively with subordinates and co-workers.

Application
Process:        Interested applicants should submit a Letter of Interest and Resume, and **_MUST_** submit a completed Village of Skokie Application for Employment by March 30, 2018 to: Village of Skokie Personnel Office, 5127 Oakton St., Skokie, IL 60077 or email to Human.Resources@skokie.org. Applications are available at www.skokie.org.

### APPLICATION DEADLINE: March 30, 2018

The Village of Skokie is an Equal Opportunity Employer

529093v2

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Theresa Fang<br>C/O Eugene Hollander<br>THE LAW OFFICES OF EUGENE K. HOLLANDER<br>230 W. Monroe<br>Suite 1900<br>Chicago, IL 60606 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-02474 | Shuwn Hayes,<br>Investigator | (312) 872-9733 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/eh*                    8/25/2020

Enclosures(s)

Julianne Bowman,
District Director

(Date Mailed)

cc: VILLAGE OF SKOKIE
C/O Yvette Heintzelman
Clark Baird Smith LLP
6133 N. River Road
Suite 1120
Rosemont, IL 60018

PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**

JCK Federal Building
230 S. Dearborn, Suite 1866
Legal & ADR, Suite 2020
Chicago, IL 60604
PH: (312) 872-9777
TTY: 1-800-669-6820
FILE REVIEWS & ENFORCEMENT FAX: (312) 588-1260

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 588-1260** or sent via email to **sylvia.bustos@eeoc.gov** (please chose only one method, no duplicate requests). **Be sure to include your name, address, phone number and EEOC charge number with your request.**

If you are the Charging Party and a Notice of Right to Sue has been issued, you may be granted access to your file:

> ➢ Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or
> ➢ After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) -OR- enough pages to determine whether it was filed based on the EEOC charge.

If you are the **_Respondent_** you may be granted access to the file **_only after_** a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, WILL NOT BE DISCLOSED TO EITHER PARTY.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request (Statues enforced by the EEOC prohibit the agency from making investigative information public).

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office by a requester.

Your file will be copied by **Aloha Print Group**. You are responsible for copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent in its entirety to the copy service, **and you will be responsible for the cost**. Payment must be made directly to Aloha Print Group, which charges 15 cents per page, plus a fee for shipping via FedEx.

(Revised 11/19/2019)

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Include Mr., Ms., Mrs.)<br>Theresa Fang | HOME TELEPHONE (Include Area Code),<br>847-977-6276 |
|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE<br>1712 Robin Lane, Glenview, IL 60025 | DATE OF BIRTH<br>12/28/46 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below)*

| NAME<br>Village of Skokie | NUMBER OF EMPLOYEES, MEMBERS<br>500+ | TELEPHONE (Include Area Code)<br>847-673-0500 |
|---|---|---|
| STREET ADDRESS<br>5127 Oakton Street, Skokie, IL 60077 | | COUNTY<br>Cook |
| NAME | | TELEPHONE (Include Area Code) |
| STREET ADDRESS | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es)):*<br>☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER (Specify) | DATE(S) DISCRIMINATION TOOK PLACE<br>EARLIEST(ADEA/EPA)   LATEST (ALL)<br>4/5/19        8/12/19<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I. I was hired by Respondent on August 12, 2002. My last position was Senior Accounting Clerk.

II. On April 5, 2019, Respondent advised me that my position was being eliminated.

III. I am in the protected class (age 72) when Respondent advised me of the adverse job action.

IV. I believe that I have been discriminated against on the basis of age. I worked until August 12, 2019, at which time Stella Menegas, age 56, took over my job duties.

| ☒ I also want this charge filed with the EEOC. | NOTARY. (when necessary for State and Local Requirements) |
|---|---|
| I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge, in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Charging Party Signature         Date | SIGNATURE OF COMPLAINANT          DATE<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| rm is affected by the Privacy Act of 1974: See Privacy act ...ment before completing this form. | ☒ IDHR | 2019CA2298 |
| # 19W0604.01 | ☐ EEOC | |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Theresa Fang | (847) 251-3165 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1712 Robin Lane | Glenview, IL 60025 | 12/28/1946 |
| | | MM / DD / YYYY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area |
|---|---|---|
| Village of Skokie | | (847) 673-0500 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 5127 Oakton St. | Skokie, IL 60077 | Cook |

| CAUSE OF DISCRIMINATION BASED ON: | | | | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|---|---|---|
| Age | Race | National Origin | Physical Disability | 7/2016      6/2019 |
| | | | | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

### S E E   A T T A C H E D

Page 1 of 9

DCK

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SUBSCRIBED AND SWORN TO BEFORE ME

THIS **4** DAY OF _June_ , 2019

X _[signature]_
NOTARY SIGNATURE

PATRICIA ALMARAZ
Official Seal
Notary Public – State of Illinois
My Commission Expires Sep 18, 2021

NOTARY STAMP

B1

X _[signature]_    6/4/19
SIGNATURE OF COMPLAINANT    DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_Fang , Theresa_ )
)
)
_____ )
)
_____ )      CIVIL ACTION
(Name of the plaintiff or plaintiffs) )
)
v.                         )      NO. _20-cv-06690_
)
_Village of Skokie_        )
)
_____ )
)
_____ )
(Name of the defendant or defendants) )

## **COMPLAINT OF EMPLOYMENT DISCRIMINATION**

1. This is an action for employment discrimination.

2. The plaintiff is _Theresa Fang_ of the
county of _Cook_ in the state of _Illinois_ .

3. The defendant is _Village of Skokie_ , whose
street address is _5127 Oakton Street_ ,
(city) _Skokie_ (county) _Cook_ (state) _IL_ (ZIP) _60077_
(Defendant's telephone number) _(847) – 673-0500_

4. The plaintiff sought employment or was employed by the defendant at (street address)

_5127 Oakton Street_ (city) _Skokie_
(county) _Cook_ (state) _IL_ (ZIP code) _60077_

_1_

5. The plaintiff [*check one box*]

(a) ☐    was denied employment by the defendant.

(b) ☐    was hired and is still employed by the defendant.

(c) ☒    was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

   (month) _September_, (day) _____, (year) _2013_.

## 7.1   (*Choose paragraph 7.1 or 7.2, do not complete both*.)

(a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*]   ☒ *has not*

☐ *has*    filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i)   ☒ the United States Equal Employment Opportunity Commission, on or about

   (month) _Jan_ (day) _20_ (year) _2020_.

(ii)   ☒ the Illinois Department of Human Rights, on or about

   (month) _June_ (day) _4_ (year) _2019_.

(b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached.   ☒ YES.    ☐ NO, **but plaintiff will file a copy of the charge within 14**

**days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

2

7.2    The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the

defendant asserting the acts of discrimination indicated in this court complaint.

☐    Yes (month)_____ (day)_____ (year) _____

☐    No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month) _August_

(day) _25_ (year) _2020_.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☒ YES    ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

.    (a)☐ the United States Equal Employment Opportunity Commission has not issued a

*Notice of Right to Sue.*

(b)☒ the United States Equal Employment Opportunity Commission has issued a *Notice*

*of Right to Sue*, which was received by the plaintiff on (month) _August_

(day) _25_ (year) _2020_ a copy of which *Notice* is attached to this

complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

3

(a) ☒ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).  ☒ YES  ☐ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☒ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒ other (specify): (1) Defendant does not provide equal opportunity.

4

(2) Defendant kept new hire plan from Plantiff during her hospitalization time to prevent Plantiff from applying the new position.

(3) Defendant tricked Plantiff into submitting retirement notice against her will. That was an involuntary retirement. Because of this, Plantiff lost the right to apply for unemployment benefit.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

(1) Defendant hired a younger person to take over Plantiff's job duties. Defendant violated federal law based on age.

(2) Defendant forbid Plantiff from entering her own office before 8:25 AM while other coworkers have no such limitation. This different treatment is emotionally harmful to Plantiff. Defendant violated federal law based on race.

(3) On 7/14/16 incident, Defendant asked Plantiff to resign instead of asking the guilty one to be accountable. This different treatment violated federal and state law.

(4) Defendant failed to reasonably accommodate Plantiff physical condition. Defendant violated ADA protection law.

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ YES ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): Financial loss and mental abuse compensation

5

1. For compensatory loss for past, present and future in excess of $75,000.

2. For emotional damage for past, present and future in excess of $75,000

3. Grant a jury trial.

4. For such other (include punitive damages) and further relif as this court deems just and equitable.

(g) ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_Theresa Fang_

(Plaintiff's name)

_Theresa Fang_

(Plaintiff's street address)

_1712 Robin Lane_

_____

(City) _Glenview_ (State) _IL_ (ZIP) _60025_

(Plaintiff's telephone number) (847) – _977 - 6276_

Date: _Dec 10, 2020_

6